This is 413-0069, People Ought to Know Shaw v. Brink. For the appellant, this is George Petrilli. For the appellee, this is Stanley New. Mr. Petrilli, you may proceed, sir. May it please the court. I believe we're here on the motion for summary judgment that was granted, the defendant's cross-motion for summary judgment. There were four issues that were on appeal. Beginning with the first one was the elements of whether this statute required the ex-rel plaintiff, that being the relator, would have an original source requirement within the scope of the Illinois False Plaintiff Act. I think it's agreed upon by the plaintiff, by both parties, that there is such a requirement as there should be. Based on such a requirement would eliminate any unnecessary, undue, predatory-type complaints to be filed where the relator looking to file a complaint didn't do anything to determine if that complaint was actually legitimate or not. I think in this instance, the evidence that was based off of Mr. Shaw's complaint was such that he was the actual original source of the information that was relevant to the complaint, being the evidence of pictures, his descriptions of the pleadings, all the things that he saw, witnessed, and would testify to were all part of the complaint, not only part of it, but the heart of the complaint. They were confirmed through Freedom of Information Act requests and other public searches for information. In that context, I don't believe that that should exclude any kind of claim at all. And if that were the case, if that were the interpretation of the statute, that any access to any public information at all would then preclude any kind of claim. I think all that would do would encourage parties to not do due diligence to make sure that the information that was part of their complaint and at the heart of their complaint would then be legitimate, essentially. And that's exactly what Mr. Shaw did. I think the court cases that were cited, the federal cases, I don't believe we could find too many of any guidance from state cases on this issue to find that the original source was one such that they had the information that was at the heart of the complaint, and the complaint was not based on essentially public disclosure information, things that were reported in the news, government reports. The case that lists it, Barr, was the M.K. Ferguson case citing the United States XRO Precision case where they listed the four criteria of what that would be. And going through that criteria, I think Mr. Shaw at each point then does not fail that test even to the point where we talk about the original source information. So for his purposes, there is no complaint. There is even no evidence of a complaint at all without his information that he gained by his own personal knowledge, which was then confirmed that it was never filed, that the alleged employee, Allen, was on the job site and not on the certified payroll, which was the written evidence as far as the false claims. So for the scope of the first section, that due diligence I think should be required and not something that would preclude any kind of complaint, because otherwise you would just encourage those people to not search at all for any information, but if you see something that you think could fall within the statute, then file a complaint and would then sort of open the floodgates per se to jam up any kind of the court system with litigation that was never fully vetted essentially. So I think the basis of his complaint was well within the scope of the context and the intent of the statute. As such, I think that those are facts that are genuine facts, material facts at issue that would preclude summary judgment on that issue as far as it being granted by the court in that first portion. Moving on to the second portion of the plaintiff's brief, that there was no evidence that a prevailing wage act violation had been committed. I believe through the testimony of Mr. Allen, he admitted that what his duty was, again, was to basically deliver materials and supplies, anything that anybody needed on the job site. Which were prevailing wage act public works projects. He was called by foreman, he was directed by anybody to go and get any sort of material supplies. There was a plethora of pictures that were submitted at the time that would show what he was doing on those job sites. Again, even further in his testimony, and I think also admitted by the other parties, that Mr. Allen would pick up and do whatever he was around to do as far as work, materials, any kind of thing that was on the job site. If he was around to help people out, I don't think the defendants can accept the benefit of his work without then accepting the liability of that. Meaning if he was on a public works project, he was performing work, whether even directly instructed to do so or taken up by his own accord, he was on there, he should have been then reported with the certified payrolls by the foreman because the foreman should know who were on the project. So if he's on those jobs, whether he's socializing voluntarily, they're receiving the benefit of him being there for the work that he's been doing. Whether that be very substantial or very minor, it's still the fact that he's on the job site, he should be being paid for that work. It should be recorded in the certified documents. It never was, which was the heart of this. So to say that there was never any evidence of that I think was in error because I think Mr. Allen admitted that that was his duty, that's what he did, he did that on those projects, and there's photographic evidence presented in the pleadings by Mr. Shaw, which again, whether they would be persuasive or not is an issue of fact. How about admissible? How about admissible? I believe... Do they comply with Rule 191A? As far as the affidavit, I don't believe so, but I believe with the attachment of the pleadings that it was never denied then that those weren't pictures taken by Mr. Shaw and those weren't what he had verified in the... The Supreme Court says strict compliance in motions for summary judgment with Rule 191A. Correct. It's not signed, not sworn to, no foundation shown. Pictures aren't worth anything, counsel. Sure. And again, if you would take, even eliminate the pictures, I think that the complaint that was made and the format that it was made would also be inherent that there was an allegation that was not denied that that work was performed, that he was the creator of that because without his information even striking the pictures, there would be no complaint to be made at all. So although it may not be completely explicit, I think inherent in the complaint and the allegations which were never... As far as I can recall now, were never denied by the defendant and should be taken as fact or at least an issue of fact that would preclude summary judgment at the time. As far as the third portion of the appellant's brief here, there's the knowing requirement in the statute and in that statute in the text, the knowing requirement does not require specific intent. I think for the simple fact that Mr. Allen was employed by the defendants, he was performing work for the defendants, the defendant should have knowledge of his work and should receive a liability through that work vicariously because of the work that he performed. Again, it was admitted that it was performed on those types of projects and was qualified work. There were some instances in which he was properly paid and properly attached to the certified payrolls for the prevailing wage act purposes, but for the cases that were the public works projects that were cited in these instances, he was never on those certified payrolls. So knowingly I believe is whether it be deliberate indifference, whether it be reckless disregard, could not find really any guidance as far as how we determine that, but as far as there being no specific intent, the employer I think knowingly should be responsible for what the actions of their employees are at all times while they're working at the benefit of and on behalf of that employee. Again, his direction was to do whatever he was told to do, whether that be deliver material supplies, etc. He did those types of things. I don't think now they can hide behind the fact that they did not maybe at a particular date and time specifically require him to do X, Y, and Z duty, but now they're trying to say that, well, we shouldn't be able to have to be responsible for that, for what he did because we didn't directly do that to him. I don't believe that that's within the confines of the employer-employee relationship as it's recognized in many other facets. So I believe that the knowingly requirement was also met. The issues of whether or not that would be proven again is a genuine issue of fact that would preclude summary judgment. The final issue that we believe the trial court had erred on was whether or not the complaint could be moved on because of damage to the state may not be completely shown as far as a monetary amount. That question I know is, at least for the trial court, was a little bit difficult for everybody to argue and for the judge to sort of wrap his head around. The idea being that just because the state was not defrauded of an X dollar amount, meaning that they didn't overpay for services, doesn't mean that the state didn't suffer any damage through that. I don't believe the statute's intent is necessarily for monetary damages exclusively at all, and that the state can be damaged in a number of ways, one by showing that if an employee isn't paid enough, they're not paying proper payroll taxes. Then the employer is not to the state. Then the employee won't be paying proper income taxes because they would be getting paid more. Also, the damage that is done to the system and the protection of the workers that the state law was enacted to protect. So to say that it's exclusively a matter of whether you can put dollars and cents on the amount the state was defrauded would then say that, well, it's proper then to underpay employees because then the state has to pay less. Or it's proper then to not say how many employees are on that job because the state would actually get a better deal because they weren't paying for so many employees. So I don't believe that that requirement is one in which you have to show that the state was defrauded of a specific amount of money, but just that the fraudulent activity induced payment by the state, and in that, that would allow for the complaint to move forward to show the damage that's done. And any monetary damage, I know there's a treble calculation in there, that would just be on the relator that their purpose and intent was to try to recover money. In that instance, they may not recover very much. But I think the intent of this act is to try to root out fraud where it's recognized and to be able to move forward with that where there is damage to the state, whether that be specifically monetary or whether that be based on public policy issues. And that would conclude my comment. Okay. Thank you, Counsel. Mr. New? Counsel? I think it's important for this panel to understand what the facts are in the case. The realtor, Shaw, what did he really do? He went to IDOT municipal government websites to determine what jobs were being performed or were performed by BRINC. He then sent in FOIA requests for certified payroll in the case of municipal government or county government. And in the case of IDOT jobs, the FOIA requests were not necessary because the certified payroll was available on the website. Now, that goes to the question of whether or not Shaw was an original source. The target case which I cite, first thing it said is that the Federal Fair Claims Act and the Illinois Act are virtually identical. And went on to say that a public disclosure bar, unless a person bringing the action is an original source, and the Act defines original source as an individual who has direct and independent knowledge. Accordingly, the court said, once there is a public disclosure, the next step for the court to do is to determine whether the relator is an original source. The target court held that the relator there was not an original source because the complaints were supported by information which were available in congressional transcripts. Mr. Shaw's claim is expressed in the same manner as in that case. The Schindler U.S. Supreme Court case I think is really important. The holding of that case is a federal agency's written response to a request for records under FOIA constitutes a report within the meaning of public disclosure bar. So if someone makes a FOIA request and that part of the request is used by the relator, that person is not an original source. Plaintiff asserts that Shaw's due diligence of taking photos saved the day. I suggest to the court that that's not the standard. The standard is that if there is any of the actions by the realtor, even if they're partly based on public disclosure, the realtor is not an original source and the public disclosure bar applies. It's important to understand the logic of the Supreme Court in the Schindler case. The court said although Kirk, that's the realtor, alleges that he became suspicious from his own experiences working for Schindler, anyone could have filed the same FOIA request and then filed the same suit. Similarly, anyone could identify a few regulatory filing and certification requirements, submit FOIA requests until he discovers a federal contractor is out of compliance. The court concluded that that's not what the statute was intended, that that would be a windfall. So what did Shaw do? Shaw did exactly that. He had a suspicion that Brink was not paying proper. Did the website searches and then compared the certified payroll to whether or not Allen was there. Under these circumstances, the realtor here simply had no direct knowledge. He did not do it from his own efforts and it was as a result of the intervening agencies, IDOT, municipal government, and county government. I think the Judge Adrian and the trial court correctly concluded that the state suffered no damage. And the intent of the False Claim Act is to recoup any damage that the state or the federal government would have had. And the judge correctly concluded that there are no damages shown or nor can they be shown. The photos, I think this panel pretty much concluded that Rule 191A has not been complied with and also Supreme Court Rules of Evidence 801. The photos simply are hearsay, not relevant. The witness was not familiar with the scene. None of the elements were met. Even if those documents were admissible, those photos do not show anything. They incorrectly show that there was private work. There are photos of trucks that do not belong to Brink. They allege that Allen is doing mechanics work but admits that there are no tools. The main job of Allen was delivery of fuel. Allen testified in his deposition that approximately three or so hours a day when he was not working in the shop was delivery of fuel. The trial court correctly concluded that the delivery of fuel is not covered under the Prevailing Wage Act. I think the pertinent provisions of the Prevailing Wage Act are Sections 2 and 3 and they must be read together, not independently. Under Section 2 it goes on that the Act says maintenance, repair, assembly, disassembly work performed on equipment is public works and it goes on to define construction as all work on public works involving laborers. There is a case in the Third Circuit which I cited, the Hochraffer case, which is really important. Hochraffer interpreted Section 3 of the Prevailing Wage Act. The claimant in the Hochraffer case worked in the shop, he constructed items in the shop, he packed it, and he delivered those materials that he made to the job site. The court concluded in that case that Section 3 of the Prevailing Wage Act only applies to those workers who are directly employed by contractors and since the plaintiff there was not directly on the job site, he falls into the same category as does Mr. Allen. Now we need to look at what Allen actually did. Not only did he say that he delivered fuel about three hours a day, he says he obtained drinking cups. He would sell his fellow employees sodas and gloves. He would work in the shop in the wintertime and do snow removal. But most important, Mr. Allen had just retired and the testimony was extremely candid and he admitted that the most of his day was socializing. It was not doing work. What the plaintiff is asking is that the court insert a provision in the Prevailing Wage Act, but the act, I believe, is unambiguous so it's the court's function to enforce the statute as written. Plaintiff is asking that the court insert the term fuel in the meaning of the Prevailing Wage Act and under the cases that is impermissible. The question of whether or not the defendant knowingly violated the Prevailing Wage Act is that issue. Plaintiff asserts in its brief that Reynolds Brink had general knowledge of calls by the foreman to Allen. That simple fact does not rise to the level of reckless disregard for truth or falsity of information. In the Omnicare case is an example of what's a deliberate disregard. And that was the facts in that case. There was improper labeling of prescriptions which met the deliberate ignorance standard. In addition, if a person reasonably relies on a law, there's no violation of the False Claims Act. For example, in the Ritz case, Ritz interpreted a statute to mean that his internet sales were not subject to taxes. The court in Ritz concluded that reasonable interpretation of a statute was not enough to raise to the level of knowing. Reynolds Brink testified that he reasonably believed that the fuel was excluded from the Prevailing Wage Act and also looked at Department of Revenue regulations, which he is subject to. And those regulations provided that fuel not incorporated into the real estate is non-taxable. His conclusion was, if that regulation shows that it is non-taxable and not incorporated into realty, fuel also is not incorporated into the real estate. In conclusion, plaintiff is simply not an original source under the Act. Plaintiff failed to show a violation of the Illinois Prevailing Act. The delivery of fuel is clearly excluded from the coverage. There is no evidence that defendant or its president knowingly violated the False Claims Act. And the photos obviously are purest. That concludes my argument. Great. Thank you, counsel. Mr. McCurley, any rebuttal, sir? Okay. On the issue of whether Mr. Shaw was an original source or not, I think part of what counsel has said was that he did go get information to confirm whether or not Mr. Allen was on those job sites. That was not the genesis of the complaint by any means at all. It was his own personal knowledge of whether Allen was there or not and then whether or not he was actually listed on the certified payrolls. Without Shaw's personal knowledge, even excluding the photographs, again, there is no complaint here and there is no public disclosure at all of whether Allen was on a job site or not or what type of work he did or not. There is no possible way or government report or any kind of filing you could find to say whether he was there or not outside the certified payrolls to just confirm that he was not. Again, that would just confirm Mr. Shaw's suspicion that what he saw and what he witnessed being this a violation of the Prevailing Wage Act was then actually true and something that he could move forward then with. So to say that this due diligence was to confirm knowledge he found from a FOIA I think is in reverse because the FOIA information then confirms his actual knowledge of who was on that job site and what days and times by his own personal viewing of that, by his own knowledge of it. So that, I think, is the genesis of the complaint, is the original source. Without his information, his personal knowledge, again, there is no complaint. I think that's the purpose of the original source. As far as whether Allen was on the job site again, I think that's a specific matter of genuine issue of fact. Was he there or not? Was he doing his work or not? Not a matter of law, again, that I think includes summary judgment. On the issue of whether fuel is included in the Prevailing Wage Act, I believe that the language just describes the delivery of materials and equipment. As what the defendant does for their construction that they do is heavy highway construction, which involves a lot of heavy equipment. To say that fuel is not part of that construction process as a material I think is misguided to say that it's just not incorporated. I think it would be difficult, if not impossible, to do heavy highway construction without fuel. So to say that that's not part of the construction project because it's not incorporated into it, you could probably say that it is because the equipment that's performing that work is actually doing that and you need the fuel to do it. So we would say that the interpretation is to exclude fuel because there is no exclusion of fuel. It's materials and equipment that's going to be used on that project. The fuel is. I think that that is misguided. I think they're looking for an exception that fits because it would be convenient if fuel wasn't involved. There's no allegation that fuel was coming from a third-party other as a supplier. Delivery brings fuel. It was bringing to his equipment. Allen was delivering it. So to say that fuel is exclusively excluded because it's not part of the project or not incorporated in the project I think is misguided. Again, when Kelsey talks about Mr. Brink's knowledge, he says that he relied on a Department of Revenue statute for taxable purposes. I think it cannot be compared to say that that's how you're going to interpret essentially a worker protection statute, which is what the Prevailing Wage Act is. So to say that, well, he relied on that. So whoever delivers fuel because it's not taxable, well, that means that's materials and construction equipment for the purposes of the Prevailing Wage Act. Again, it's completely against the intent. The intent of this act is to protect workers and to pay them adequately for their work that's qualified under that statute. Thank you, counsel. We'll take this comment and advisory day recess for a few moments.